Sandra McIntosh-Edwards
270 Holiday Way
Oceanside, CA. 92057
Telephone: (760) 893-9026

In Pro Per

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA MCINTOSH-EDWARDS, an individual, | Case No. **13 CV 2710 BTM NLS** |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| vs. | |
| WOMEN'S RESONURCE CENTERS et al, | |
| Defendants | **Jury Trial Demanded** |

## I. INTRODUCTION

1. This is an action for damages brought by Plaintiff, Sandra McIntosh-

1

Edwards, an individual, against Defendant Women's Resource Center ("Defendant") for violations of Age Discrimination in Employment Act of 1967, the American with Disabilities Act of 1990, Title 1 42 U.S.C. 12111-12117, California Business and Professions Code Section 17200, and Negligent Infliction of Emotional Distress.

## II. JURISDICTION AND VENUE

2. This court has jurisdiction over this case because Plaintiff allege federal claims. Thecourt has pendent jurisdiction over the state claims, which arise out of the same nucleus of facts as the federal claims. Venue is proper because all parties reside, or operate the businesses where the alleged misconduct occurred, in San Diego County, California, and because all of the alleged wrongs occurred in San Diego County, California. Plaintiff was issued a right to sue letter by the EEOC.

## III. PARTIES

3. Plaintiff is an individual who, at all times mentioned in this complaint, resided in SanDiego County.

4. Defendant is an organization located in Oceanside, California, which has at least 50 employees.

## IV. FACTUAL ALLEGATIONS

5. Plaintiff Sandra McIntosh – Edwards was employed by Defendant Women's Resource Center for **32 years**, from February 28, 1981 until March 21, 2013. She was hired on February 28, 1981to work full - time, 40 hours per week, as a house

2

manager. She worked with battered women, and children at a battered woman's shelter in a confidential location. Plaintiff's job consisted of client intakes, checkouts, contact with other agencies, and handling donations. She provided resources to clients, referring them to Women's Resource Center or outside agencies and resources. As part of her duties, Plaintiff addressed clients' personal needs on a daily basis. Plaintiff and other staff were responsible for upkeep, house duties, and other duties as assigned, including participation in fund raisers. During these 32 years of employment, Plaintiff demonstrated her dedication to Defendant and its purported cause by being open to shift changes, including last minute ones, fill-ins as needed, and working weekends and holidays. Plaintiff worked hard and enjoyed her work as well as her working relationship with her co –workers.

6. In August of 2013, Plaintiff experienced severe pain in her back and sought immediate medical attention. She was taken to the emergency room at Tri-City Hospital where several tests were conducted to determine the cause of the extreme back pain. Plaintiff was informed by the doctor at Tri-City Hospital that she had a serious kidney infection and that she needed surgery to remove kidney stones located in and about her left kidney. On August 30, 2013, Plaintiff proceeded with the surgery, as advised by her doctor. Due to the serious infection, Plaintiff had to take off from work for a long period of time. Her available sick time was 80 hours, and her available vacation time was 240

3

hours. In addition to the kidney infection, Plaintiff suffered from knee injury which caused severe pain when she attempted to climb stairs. Before leaving to have the surgery that was recommended by her doctor, Plaintiff informed her employer of the kidney infection, the kidney stone surgery, and the severe knee pain she experienced when she attempted to climb up and down stairs. Plaintiff also provided Defendant with a statement from her doctor, which stated that she would have to be off work in order to have surgery and heal.

7. During her recuperation from the surgery at home, Plaintiff kept the line of communication open with Laura Kimsey in Defendant's Human Resources Department of Defendant, and Lindsay Samson, in Defendant's Administration department. Ms. Kimsey and Ms. Samson contacted Plaintiff on a regular basis. They asked how Plaintiff was doing. Plaintiff assumed that her job was there and waiting for Plaintiff as soon as she was available to return to work.

8. In the early part of 2013, Plaintiff could not make contact with Ms. Kimsey in Defendant's Human Resources Department, but was in contact with Ms. Samson. Plaintiff told Ms. Samson she was going to return to work. However, Plaintiff continued to suffer severe knee pain each time she attempted to go up and down any stairs.

9. On March 19, 2013, Jill Morgan called Plaintiff, from Defendant's Human

4

Resources Department, and informed Plaintiff that she had until March 21, 2013 to get clearance from the doctor who took her off work, in writing, stating that she was able to return to work, with no restrictions. Ms. Morgan stated that Plaintiff had no more hours left. Ms. Morgan told Plaintiff that she was filling in for Ms. Kinsey, in Defendant's Human Resources Department. Plaintiff requested and obtained a letter from the doctor which stated that Plaintiff was cleared to return to work. The doctor's statement did not state that she could return to work without restriction. It stated that she should avoid climbing stairs, due to the pain she continued to experience in her knees, when climbing stairs. Plaintiff delivered this doctor's statement to Defendant's office on March 21, 2013, with Defendant's receptionist as requested.

10. Plaintiff called Defendant to confirm that she would be returning to work. Defendant did not return her call.

11. On March 22, 2013, Plaintiff, without warning or prior notice, received a certified letter from Defendant which stated that Plaintiff had been "volunteered resigned" on March 21, 2013. A $400 check was mailed to Plaintiff for remaining hours, vacation time, and holiday pay. At no time did Plaintiff ever resign. At all times, Plaintiff told her employer she was returning to work as soon as she recovered from her medical problems. Plaintiff was not notified by Defendant to meet to fill out exit paperwork.

12. Plaintiff later discovered that Defendant had hired a younger employee for her

position, despite Defendant's repeatedly confirming Plaintiff's status of returning back to work.

13. Plaintiff experienced extreme emotional distress, including shock, sleeplessness, crying, panic, anxiety, worry, humiliation, stress, betrayal, trembling, and depression as a result of being abruptly terminated from her job of 32 years, learning that a memo was being circulated to fill her position even as Defendant promised that she could return to work , and that she was replaced by a younger employee.

14. Plaintiff felt discriminated against due to her medical condition and her age-related physical disabilities and limitations, including her inability to go up and down stairs. Defendant never mentioned Plaintiff's inability to climb stairs until after they had hired her younger replacement. As a result of the age discrimination and an unfair business tactics employed by defendant, (1) Plaintiff suffers from emotional and mental depression, (2) Plaintiff has no joy in her day to day living, (3) Plaintiff's relationship has suffered with her husband, (4) she has difficulty socializing or even leaving home, (5) her extreme emotional distress has caused a breakdown in communication between her and her husband has suffered resulting from her unemployment, her bond with her husband, and her marital relations with her husband, (6) she worries about everything and if she will be able to afford her medication each month, due to the severe financial constraints caused by her being fired by Defendant, (7) her loss of income from

defendant has left her unemployed and in severe financial constraints,(8) her ability to work is severely damaged if not permanently destroyed, (9) she is extremely concerned about her health and her life, (10) her life has changed dramatically in that her finances were zero, she had to apply for disability, she no longer has insurance. Plaintiff has also been devastated to learn that defendant changed the policy, after firing her, to require persons working in my former position to climb stairs.

15. Defendant did not offer Plaintiff who wanted another opening position as house manager at Defendant's transitional housing facility from 6-11p.m., a part-time position as a receptionist, and or a part-time position at the thrift store, that did not involve stairs.

16. Defendant maintains unsafe and hazardous conditions. Defendant has stairs in the back of the house where Plaintiff worked, with two flights to the 2nd floor. The first flight of stairs has no hand railings. The second flight of stairs has one hand railing on the wall which is not stable, is loose, shaky, and not double sided. It doesn't reach to the top step, and is not handicap friendly. At the back house, entry is not ramp accessible to entering the back house. Access to the laundry is unsafe because the stairs are unsafe to use, and staff have slipped carrying linen to the washer downstairs. In Defendant's living room/hallway, the step down is not safe, is hazardous, and has caused many falls. Defendant's "extra supplies" are stored in the house managers room, which is very toxic

with fumes, with no safety exit to evacuate. Current and previous clients' files were missing and never returned; there were questions about the confidentiality of files. On April 13, 2013, the staff's personal files went missing and new ones were made at will. Defendant's Lindsay Samson used her position of authority as leverage to manipulate Plaintiff and situations to her advantage. Plaintiff was terminated in vindictive retaliation for complaining about these hazardous and unsafe conditions. Her disability was used as an improper pretext and excuse to fire her.

17. Plaintiff timely filed a complaint with the EEOC. The EEOC issued Plaintiff a right to sue letter which is attached to this complaint as Exhibit A and incorporated by reference.

## FIRST CAUSE OF ACTION
## FOR VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967

18.     Plaintiff incorporates by reference all of the facts stated in paragraphs 1-17 as if set forth fully herein.

19.     Plaintiff is 62 years old. Plaintiff is a member of a protected class. Plaintiff was qualified to perform the job in question. Plaintiff had been doing the job for 32 years before her termination, and she suffered an adverse employment action. She was replaced by a younger employee to save Defendant the cost and inconvenience of having to retrofit property to accommodate Plaintiff's mobility disability or otherwise accommodate the

8

Plaintiff's disabilities. Defendant filled Plaintiff's job with a person not of Plaintiff's protected class, namely a younger applicant. Plaintiff was fired vis a vis younger employees. She was fired on the basis of age and disability. Defendant violated the state and federal Americans with Disabilities laws, by refusing to accommodate her disability in the work place. Plaintiff was subjected to adverse employment actions while working for defendant, and was penalized by defendant's decision to replace her with a younger employee rather than accommodate her previously reported medical disabilities. Plaintiff was the victim of disparate treatment, as compared to younger employees. Plaintiff was retaliated against, and fired.

## SECOND CAUSE OF ACTION

### FOR VIOLATION OF THE AMERICAN WITH DISABILITIES ACT OF 1990
### TITLE 1 42 U.S.C. 12111-12117

20. Plaintiff incorporates by reference all of the facts stated in paragraphs 1-19, as if set forth fully herein.

21. Defendant has 50 or more employees. Defendant discriminated against Plaintiff because of her medical disabilities. Plaintiff is, and at all times mentioned in this complaint was qualified for the job from which she was fired. Defendant took adverse action against Plaintiff because Plaintiff was disabled with damaged knees, a kidney infection, and other age-related medical conditions, and Defendant determined that her

disabilities, and the need to accommodate those disabilities, would cost Defendant too much inconvenience and perhaps money. Defendant terminated Plaintiff's employment, due to her disabilities. Plaintiff was denied reasonable accommodation and work related modifications to permit her to perform her work duties, because Defendant did not want to pay for any work-related modifications or any other results of her chronic and dischronic and disabling medical conditions.

### THIRD CAUSE OF ACTION

**FOR VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200**

22. Plaintiff incorporates by reference all of the facts stated in paragraphs 1-21, as if set forth fully herein.

23. Defendants engaged in a pattern and course of deceptive conduct which culminated in Plaintiff's termination. Defendant violated Title VII, Title 1 American with Disabilities Act of 1990. Plaintiff suffered injury in fact when Defendant terminated her employment in violation of Title VII. The damages suffered by Plaintiff in violation of Title VII. The damages suffered by Plaintiff include the loss of her job, her livelihood, her income, and her reputation, is Defendant's unfair and deceptive business practice.

### FOURTH CAUSE OF ACTION

**FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

24. Plaintiff incorporates by reference all of the facts stated in paragraphs 1-23,

10

as if set forth fully herein.

25. Defendant's conduct caused her to suffer serious emotional distress. Defendant was negligent. Plaintiff suffered serious emotional distress. Defendant's negligence was a substantial factor in causing Plaintiff's serious emotional distress. Plaintiff suffered anguish, fright, nervousness, grief, anxiety, worry, shock, humiliation, and shame. An ordinary, reasonable person would be unable to cope with the stress suffered by Plaintiff as a result of Defendant's conduct.

26. Defendant negligently breached a duty arising out of a preexisting employer employee relationship. There was a duty owed the plaintiff that is imposed on the defendant as a matter of law and that arises out of a relationship between the two. A reasonable man, normally constituted, would be unable to adequately cope with the mental stress engendered by Defendant. Plaintiff experienced extreme emotional distress, including shock, sleeplessness, crying, panic, anxiety, worry, humiliation, stress, betrayal, trembling, and depression as a result of being abruptly terminated from her job of 32 years, learning that a memo was being circulated to fill her position even as Defendant promised that she could return to work , and that she was replaced by a younger employee.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

1.Damages in the amount of $250,000.

2. Punitive damages.

3. Compensatory damages and other damages as are just and proper.

4. Attorney's fees and costs.

5. Any relief that this court deems proper

6. A order compelling defendant to eliminate the hazardous and dangerous conditions of the premises.

## Verification

I, Sandra Edwards, have a read the attached complaint and I agree that the complaint is true and accurate to the best of my knowledge. I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct. Executed this 26th day of October 2013 in San Diego County, CA.

*Sandra Edwards*
Sandra Edwards